Respondent disbarred.

COMMISSIONERS OF THE STATE INSURANCE FUND, Appellants, *v.* HERBERT J. LOW, Respondent, et al., Defendant.

Third Department, March 9, 1955.

*Raymond C. Green, Bernard Katzen* and *Harry Schechter* for appellants.

*William J. Murphy* for respondent.

FOSTER, P. J.   By an order of the Supreme Court plaintiff's alleged cause of action against defendant-respondent Low has been dismissed under rule 113 of the Rules of Civil Practice. The defendant mentioned successfully invoked the doctrine of *res judicata*.   The facts, which are undisputed, are these.

On December 19, 1950, a collision occurred between an automobile owned by the State of New York and a vehicle owned and operated by the defendant Low.   The State car was driven by a State trooper and with him was a corporal of the State police whose name was Meyers.   Low was injured as a result of the collision and Meyers was killed.   Subsequently Low filed a claim against the State in the Court of Claims and was awarded a judgment which was affirmed by this court (*Low* v. *State of New York,* 281 App. Div. 731).   In the meantime Meyers' widow filed a claim for compensation under the Workmen's Compensation Law and was awarded death benefits which were paid by the State Insurance Fund as compensation insurer for the State. No action was commenced by any legal representative of the Meyers' estate against Low, the third party, within the period specified in section 29 of the Workmen's Compensation Law; and hence any action which the estate might have had was assigned to the State fund as a matter of law.

On February 21, 1952, the State fund, as statutory assignee, brought the present action against Low. The latter in his answer set forth an affirmative defense which alleged in substance that his prior judgment against the State was a complete bar to the State fund's subrogated action. Upon Low's motion the Special Term granted an order for summary judgment in his favor dismissing the complaint of the State fund.

There are many cases dealing with the doctrine of *res judicata* but our research and that of counsel fails to disclose a precedent wholly analogous to the situation presented here. In the first place a tort action for personal injury is not ordinarily assignable in this State (Personal Property Law, § 41). However special statutory authority for the assignment of a cause against a third party is found in the Workmen's Compensation Law (§ 29). Secondly, there is the troublesome consideration of the identity of the State fund with the State, and the matter of public policy that may arise therefrom. These factors serve to distinguish this case from the many cases where only private interests were involved. Lacking a definite precedent one can only reason from general principles.

The State Insurance Fund is an agency of the State. It is created by section 76 of the Workmen's Compensation Law, which provides: " There is hereby continued in the department of labor a fund known as ' the state insurance fund ', for the purpose of insuring employers against liability for personal injuries or death sustained by their employees ". When the Workmen's Compensation Law was passed, and employers were required to insure their employees against accidental death and injury, the State had to go into the insurance business to cover risks that private companies might deny. Hence, while it is correct to say that the fund is an agency of the State, it also has, for all practical purposes, the same characteristics as any insurance carrier.

As an agency of the State it may be sued in the Court of Claims (*Cardinal* v. *State of New York*, 304 N. Y. 400), but at the same time it is given the right of subrogation against a negligent third party where the injured employee or his dependents fails to sue within the time limited therefor, the same as a private carrier. Thus section 29 of the Workmen's Compensation Law provides: " 2. If such injured employee, or in case of death, his dependants, has taken compensation under this chapter but has failed to commence action against such other within the time limited therefor by subdivision one, such failure shall operate as an assignment of the cause of action against such other to the state *for the benefit of the state insurance fund,* if compensation be

payable therefrom, and otherwise to the person, association, corporation, or insurance carrier liable for the payment of such compensation." (Emphasis supplied.) In addition the fund is actuarially managed, and subject to examination by the State Insurance Department the same as private insurance companies (Workmen's Compensation Law, art. 6). It has a general attorney, and is not represented by the Attorney-General who is charged generally with defending the State. (Workmen's Compensation Law, § 84.) It may sue in its own name, or in the name of its commissioners. From these facts the conclusion is quite logical that the Legislature intended the fund to be treated for all insurance purposes the same as a private carrier. This we think is of some importance in the solution of the problem here.

The doctrine of *res judicata* rests not only on the principle of estoppel but also upon a consideration of sound public policy. There must be an end to litigation somewhere, and public policy requires that different decisions should not be rendered on the same state of facts as to the same parties and their privies (*Matter of New York State Labor Relations Bd.* v. *Holland Laundry,* 294 N. Y. 480; *Smith* v. *Fitzpatrick,* 305 N. Y. 66; *Haverhill* v. *International Ry. Co.,* 217 App. Div. 521). To these general principles may also be added the doctrine of collateral estoppel. Thus, where a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment the determination is conclusive between the parties in a subsequent but different cause of action (Restatement, Judgments, § 68). In reality it is something akin to this principle of collateral estoppel that the respondent defendant Low invokes here. The easy solution to the question would be to say that the State Insurance Fund is the State, and therefore the fund is estopped under the doctrine of collateral estoppel, but this solution ignores some distinctive factors.

It is obvious of course that if the estate of Meyers had brought an action against Low the latter could not plead his judgment from the Court of Claims as a bar. He concedes that the present action is not the same as his action against the State but he argues that his freedom from negligence was litigated and determined in a claim arising out of the same accident, and hence that determination is binding on the fund in this action where, if the case went to trial, the same issue would have to be litigated again.

There are several answers to this contention in our opinion. In the first place the doctrine of collateral estoppel which respondent seeks to invoke, although not by name, does not apply

to a property right subsequently acquired (Restatement, Judgments, § 78). The statutory assignment running to the State for the benefit of the fund was a species of property right which came into existence after respondent had filed his claim with the Court of Claims. Possibly it might have been litigated in that action, but under the circumstances we do not think the fund was required to set it up as a counterclaim. The State, per se, does not prosecute or defend litigation for or against the fund, and the latter has no part to play in litigation directly against the State.

Second, the statutory assignment carried to the State merely in name whatever cause of action the Meyers' estate might have had against respondent solely for the benefit of the State Insurance Fund. That the Legislature considered the fund to be the real owner of any subrogated action is indicated by section 84 of the statute, where the general attorney of the fund is directed to " prosecute all claims against third parties under the subrogated rights of the state fund, in accordance with the provisions of section twenty-nine of this chapter.'' This language rather clearly implies an intent that the fund is to be treated as any other insurance carrier, and its rights and obligations as separate and apart from general liabilities of the State.

Third, if the fund was entitled to the benefit of a statutory assignment arising out of any action the Meyers' estate might have had it was entitled to the full benefit thereof, unimpaired by the result of any quarrel between respondent and the State itself. This conclusion follows as a matter of public policy, we think, from the very nature of the fund, its purpose, and its actuarial administration. Otherwise the fund does not get the benefit of a complete assignment, such as any private carrier would, but rather an assignment limited by defenses not within the contemplation of the statute.

From the foregoing we draw the final conclusion that this case does not present the identity of parties and issues, the mutuality of estoppel, or the underlying consideration of public policy, that are required for the application of the strict principle of *res judicata*.

The order should be reversed, with $10 costs, and the motion for summary judgment denied, without costs.

BERGAN, COON, IMRIE and ZELLER, JJ., concur.

Order reversed, with $10 costs, and the motion for summary judgment denied, without costs. [See *post,* p. 1194.]